**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAYLA PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-cv-01274-RJC |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW CASTLE POLICE DEPARTMENT, | ) | Judge Robert J. Colville |
| OFFICER RANDALL COOK, in his | ) | |
| individual and official capacities; OFFICER | ) | |
| MARK MANOS, in his individual and | ) | |
| official capacities; OFFICER BRIAN | ) | |
| LOMBARDO, in his individual and official | ) | |
| capacities; and OFFICER RICHARD | ) | |
| CONTI, in his individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER OF COURT

Before the Court is the Motion to Sever (ECF No. 18) filed Defendants New Castle Police

Department and Officers Randall Cook ("Officer Cook"), Mark Manos ("Officer Manos"), Brian

Lombardo ("Officer Lombardo"), and Richard Conti ("Officer Conti") (collectively,

"Defendants").[1]  Defendants argue that the claims set forth against them in the First Amended

Complaint (ECF No. 17) filed by Plaintiff Jayla Price ("Plaintiff") stem from Plaintiff's separate

encounters with separate law enforcement officers on separate dates, and that there are no

allegations of conspiracy, retaliation, or any suggestion of a concerted effort by various law

enforcement officers to take actions toward Plaintiff.  Br. in Supp. 1; 4, ECF No. 19.  Defendants

argue that Plaintiff's claims against the Defendants should be severed pursuant to Fed. R. Civ. P.

---

[1] The Court shall refer to the four officer Defendants collectively as the "Officer Defendants."

21, and request that the Court require Plaintiff to bring her claims related to each encounter in three separate lawsuits.  Mot. to Sever ¶ 6, ECF No. 18.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).

## I.      Procedural History & Factual Background

The Court notes that the Motion at issue and the briefing submitted by Defendants and Plaintiff largely mirror those submitted with respect to Defendants' first Motion to Sever (ECF No. 10).  Following consideration of that Motion, this Court entered a Memorandum Order (ECF No. 14) wherein the Court found that Plaintiff's original Complaint (ECF No. 1) failed to set forth allegations which sufficiently connected the three encounters at issue in this matter.  Mem. Order 10, ECF No. 14.  The Court further permitted Plaintiff to file an amended complaint, and also dismissed Defendants' Motion to Sever without prejudice to Defendants raising of the issues presented therein, if warranted, upon Plaintiff's filing of an amended complaint.  *Id.*  Plaintiff subsequently filed her First Amended Complaint, and Defendants filed the Motion to Sever presently at issue.  Plaintiff filed a Brief in Opposition (ECF No. 21) to Defendants' Motion on April 7, 2021.  Accordingly, Defendants' Motion has been fully briefed, and is ripe for disposition.

In her First Amended Complaint, Plaintiff again sets forth allegations against the New Castle Police Department and the Officer Defendants related to three encounters between Plaintiff and the Officer Defendants.[2]  Plaintiff sets forth the following allegations relevant to Defendants' Motion to Sever:

---

[2] Plaintiff's First Amended Complaint largely mirrors her original Complaint, with the primary distinction being that Plaintiff's First Amended Complaint includes additional allegations regarding Officer Conti's purported involvement in each of the three alleged encounters.  Specifically, Plaintiff's original Complaint set forth allegations as to the involvement of unidentified police officers during the first and second encounters, and the First Amended Complaint contains amended allegations asserting that Officer Conti was one of these originally unidentified officers.  *See* Am. Compl. ¶¶ 15; 21; 28; 49, ECF No. 17.  Given the similarity between the original Complaint and the First Amended Complaint, and the in the interest of judicial efficiency and economy, the Court will utilize its February 1, 2021 Memorandum Order's summary of the relevant facts of this case, which cited to the original Complaint, and will utilize footnotes to denote the additional facts alleged in the First Amended Complaint.

A. **First Encounter**:

The first encounter occurred on November 30, 2018 and involved Officer Cook.  Compl.

¶¶ 10-34, ECF No. 1.[3]  On that date, Plaintiff and another individual arrived at the scene of a traffic

stop to provide transportation to Plaintiff's cousin, whose vehicle was being towed as a result of

the traffic stop.  *Id.* at ¶¶ 10-11.  Plaintiff stepped out of the passenger side of her vehicle to inquire

as to whether her cousin required assistance in loading his belongings into the vehicle Plaintiff had

arrived in.  *Id.* at ¶ 12.  At that time, three additional police vehicles arrived, Plaintiff was forcefully

instructed to return to her vehicle, and, upon asking Officer Cook what was going on, Officer Cook

again instructed Plaintiff to get into her vehicle.  *Id.* at ¶¶ 13-16.[4]

After Plaintiff turned around to return to her car, Officer Cook grabbed Plaintiff's arm and

moved her arm in an upward manner as though attempting to break it.  Compl. ¶ 18, ECF No. 1.

Despite Plaintiff's request that Officer Cook stop, Officer Cook continued manipulating her arm,

and two other officers began to strike Plaintiff in her back and head with their fists.  *Id.* at ¶¶ 19-

21.[5]  Officer Cook ordered Plaintiff to stop resisting as he and the other officers ripped her clothing

and went through her pockets.  *Id.* at ¶ 21.  The officers slammed Plaintiff onto the ground, a

guardrail, and the hood of her cousin's vehicle, continued to twist her arm, ignored Plaintiff's pleas

for the officers to stop, threatened to break her arm, placed her in handcuffs, and continued to

strike the handcuffed Plaintiff as she was placed into the back of a police vehicle.  *Id.* at ¶¶ 22-27.[6]

Plaintiff was taken to the police station and placed in a holding cell, and Defendants denied

---

[3] As noted above, the First Amended Complaint alleges that Officer Conti was also involved in the November 30, 2018 encounter.  *See* Am. Compl. ¶¶ 15; 21-28, ECF No. 17.

[4] The First Amended Complaint asserts that the officer who yelled at Plaintiff and who first forcefully instructed her to return to her vehicle was Officer Conti.  Am. Compl. ¶ 15, ECF No. 17.

[5] The First Amended Complaint asserts that one of the other officers who struck Plaintiff during this encounter was Officer Conti.  Am. Compl. ¶ 21, ECF No. 17.

[6] The First Amended Complaint alleges that Officer Conti was one of the officers involved with respect to the allegations set forth at ¶¶ 20-24 and 26-27 of the original Complaint.  *See* Am. Compl. ¶¶ 22-28, ECF No. 17.

Plaintiff's requests to be taken to a hospital for treatment for injuries sustained as a result of the officers' actions. *Id.* at ¶¶ 28-30. Plaintiff was released on bail after several hours, and, upon seeking medical treatment two days later, was diagnosed with contusions and broken ribs. *Id.* at ¶¶ 31-33. On September 12, 2019, all charges against Plaintiff for this incident were nolle prossed. *Id.* at ¶ 34.

**B. Second Encounter**:

On November 12, 2019, Plaintiff was pulled over by Officer Manos. Compl. ¶¶ 35-36, ECF No. 1. Officer Manos informed Plaintiff that the traffic stop was due to Plaintiff's failure to use a turn signal, instructed Plaintiff to wait, and returned to his police vehicle. *Id.* at ¶ 37. After ten minutes, Officer Manos returned to Plaintiff's vehicle, informed Plaintiff that he had learned that Plaintiff possessed a concealed carry permit, and demanded to know where Plaintiff's firearm was located. *Id.* at ¶¶ 38-39. Despite Plaintiff's representation that her firearm was not in the vehicle, Officer Manos ordered Plaintiff to exit the vehicle so that Officer Manos could search for the gun. *Id.* at ¶¶ 40-41. Upon Plaintiff's representation that she did not want to exit the vehicle, Officer Manos stated that he was concerned for his safety and forcibly removed Plaintiff from her vehicle and threw Plaintiff against the police vehicle. *Id.* at ¶¶ 42-44. At that time, Officer Lombardo, who was in plain clothes, arrived and told Plaintiff to remain next to the police vehicle. *Id.* at ¶ 45. Subsequently, Officer Manos searched Plaintiff's vehicle, a third police vehicle arrived at the scene, and the officers threatened to arrest Plaintiff and take her to the police station to have a female officer search her. *Id.* at ¶¶ 46-48.[7] During the search, Plaintiff's Aunt drove by and inquired as to the situation, at which time the officers stopped searching Plaintiff's car and allowed

---

[7] The First Amended Complaint asserts that Officer Conti arrived in the third police vehicle during this alleged search, and that he was one of the officers who threatened to arrest Plaintiff and take her to the police station to have a female officer search her. Am. Compl. ¶¶ 48-49, ECF No. 17.

Plaintiff to return to her vehicle. *Id.* at ¶¶ 49-51.  No charges were filed against Plaintiff as a result of this encounter.  *Id.* at ¶ 52.

### C. Third Encounter:

On November 16, 2019, Plaintiff was pulled over by Officer Conti.  Compl. ¶ 54, ECF No. 1.  Upon being signaled to pull over, Plaintiff pulled into a 7-Eleven parking lot, exited her vehicle, and, desiring a safe space to speak with Officer Conti, entered the 7-Eleven store.  *Id.* at ¶¶ 55-57.  Officer Conti followed Plaintiff into the store, and Plaintiff asked Officer Conti why Officer Conti had pulled Plaintiff over.  *Id.* at ¶¶ 58-59.  Officer Conti yelled that Plaintiff had fled and was attempting to elude arrest, and then forced Plaintiff to leave the store.  *Id.* at ¶¶ 60-62.

By the time Plaintiff exited the 7-Eleven store, nine police vehicles had arrived at the 7-Eleven parking lot.  Compl. ¶ 63, ECF No. 1.  After Plaintiff returned to the parking lot, Officer Conti and the newly arrived officers struck Plaintiff on her back and head, and one officer threatened to taser Plaintiff.  *Id.* at ¶¶ 64-65.  The officers arrested Plaintiff, stripped off her pants, placed her in a holding cell, and continued to beat her while she was in the holding cell.  *Id.* at ¶¶ 66-69.  The officers slammed Plaintiff's middle finger in the steel door of her holding cell, resulting in profuse bleeding and a chunk of flesh being severed from her finger.  *Id.* at ¶¶ 70-71.  The officers did not permit Plaintiff to use the restroom, resulting in Plaintiff urinating on the floor.  *Id.* at ¶¶ 73-74.  When Plaintiff asked the officers why she had been arrested, an officer said to another officer: "[S]ee what I mean, fuck her."  *Id.* at ¶ 75.

After some time, Officer Conti took Plaintiff to Jameson Hospital, where Plaintiff was given a shot without her consent, had blood drawn without her consent, and had her injured middle finger stitched and x-rayed.  Compl. ¶¶ 77-80, ECF No. 1.  Plaintiff told a nurse that Plaintiff felt suicidal and would kill herself if she was harassed by police officers any longer, after which a

nurse administered a shot that rendered Plaintiff unconscious. *Id.* at ¶¶ 82-84. Plaintiff was subsequently discharged from the hospital without socks or long pants because the officers that took Plaintiff to the hospital had ripped them. *Id.* at ¶¶ 85-86.

Plaintiff asserts the following claims arising out of the three alleged encounters: (1) claims under 42 U.S.C. § 1983 for deprivation of Plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment against the Officer Defendants (Count I); (2) claims under 42 U.S.C. § 1983 for deprivation of Plaintiff's rights under the Fourteenth Amendment against the Officer Defendants and the New Castle Police Department (Count II); (3) state law claims for intentional infliction of emotional distress against the Officer Defendants (Count III); (4) state law claims for assault against the Officer Defendants (Count IV); and (5) state law claims for battery against the Officer Defendants (Count V).

## II.    Legal Standard

Federal Rule of Civil Procedure 21 provides: "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. District courts "have broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. CIV.A. 02-CV-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004) (citing *Fanning v. Black & Decker, Inc.*, No. 98–6141, 1999 WL 163628, at *1 (E.D. Pa. Mar.18, 1999)). "Rule 21 is 'most commonly invoked to sever parties improperly joined under Rule 20.'" *Boyer*, 2004 WL 835082, at *1 (quoting *Norwood Co. v. RLI Ins. Co.*, No. 01–6153, 2002 WL 523946, at *1 (E.D. Pa. Apr.4, 2002)).

With respect to persons who may be joined as defendants in a single civil action, Rule 20 provides:

(2) Defendants.  Persons . . . may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

The United States District Court for the Western District of Pennsylvania has explained:

> The first element of Rule 20(a), the 'same transaction' or transactional relatedness prong, refers to the similarity in the factual background of the relevant claims. Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence, or a series of transactions or occurrences.  "In determining whether a logical relationship exists between claims, the Third Circuit has stated that courts must engage in 'a detailed analysis . . . to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'"

*Washington v. Barnhart*, No. CV 17-70J, 2018 WL 3581761, at *7 (W.D. Pa. June 27, 2018), *report and recommendation adopted*, No. CV 17-70J, 2018 WL 3579840 (W.D. Pa. July 25, 2018) (quoting *Gibson v. Flemming*, Civ. No. 16-0392, 2017 WL 6039754, at *2 (W.D. Pa. Dec. 6, 2017)).  "[C]ourts in this Circuit have found that 'the same series of transactions or occurrences prerequisite under Rule 20 essentially consumes the second requirement that there arise a question of law or fact common to all joined parties.'"  *Russell v. Chesapeake Appalachia*, L.L.C., 305 F.R.D. 78, 81 (M.D. Pa. 2015) (quoting *DirecTV, Inc. v. Chorba*, 3:03–cv–0843, 2003 WL 24178469, *2 (M.D. Pa. Oct. 16, 2003)).

With respect to situations where misjoinder under Rule 20 is not present, the United States

District Court for the Middle District of Pennsylvania has explained:

> Nonetheless, the absence of a finding of misjoinder does not end the inquiry of whether severance is appropriate.  Rather, once the court has resolved these threshold questions, it may then consider additional factors in determining whether to grant a motion to sever.  These factors include:
>
> > (1) whether the issues sought to be tried separately are significantly different from one another;
> >
> > (2) whether the separable issues require the testimony of different witnesses and different documentary proof;
> >
> > (3) whether the party opposing the severance will be prejudiced if it is granted; and
> >
> > (4) whether the party requesting the severance will be prejudiced if it is not granted.

*Morris v. Kesserling*, No. 1:09-CV-1739, 2010 WL 5158412, at *4 (M.D. Pa. Dec. 14, 2010)

(citing *United States v. Nat'l R.R. Passenger Corp.,* No. 86–1094, 2004 WL 1334726, *6 (E.D.

Pa. June 15, 2004)).

## III.    Discussion

Defendants argue that, because the claims set forth against them in Plaintiff's Complaint

stem from Plaintiff's separate interactions with separate law enforcement officers on separate

dates, and because there are no allegations of conspiracy, retaliation, or any suggestion of a

concerted effort by various law enforcement officers to take actions toward Plaintiff, Defendants

have been misjoined in Plaintiff's Complaint.  Br. in Supp. 1; 4-5 ECF No. 19.  Defendants further

argue that they will be prejudiced if Plaintiff is permitted to introduce evidence of the three separate

encounters to a single jury because it is plausible that the jury will infer law enforcement was

targeting Plaintiff, which Defendant avers there is absolutely no evidence of.  *Id.* at 5-6.

Plaintiff argues that the three encounters, as alleged in the First Amended Complaint, with the Officer Defendants are interconnected because: (1) each involves Officer Conti and other New Castle Police Department officers behaving aggressively towards the Plaintiff; (2) the "consistent presence of Officer Conti and pattern of aggressive behavior gives context to the character of each successive encounter"; (3) the pattern of behavior shows that the Officer Defendants were familiar with Plaintiff, and that Plaintiff was familiar with Officer Defendants; and (4) this familiarity explains the severity of the third, and most egregious, encounter.  Br. in Opp'n 2-3, ECF No. 21. Plaintiff further argues that Plaintiff has set forth all of the facts supporting an inference of a connection between the encounters that are reasonably available to her, and that any additional facts or evidence that support or undermine such an inference are in the exclusive control of Defendants, rendering such evidence unobtainable to Plaintiff absent discovery.  *Id.* at 3.  Plaintiff also argues that Defendants' assertion of prejudice is premature because Defendants rely exclusively on the argument that they will be prejudiced at trial if Plaintiff's claims are not severed, and advance no argument that allowing the claims to proceed through discovery together would prejudice any party.  *Id.* at 3-4.  Plaintiff argues that permitting the claims to proceed together at this juncture encourages efficiency and supports judicial economy.  *Id.* at 4.

In deciding whether allegations and claims involving multiple arrests by different police officers arise out of the same transaction, occurrence, or series of transactions or occurrences such that joinder is permissible under Rule 20, courts routinely require that a plaintiff explicitly allege some connection between the multiple arrests.  *See Peterson v. Regina*, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) (holding that "there would have been no basis for allowing their joinder in a single lawsuit," and explaining "[t]here is no allegation or evidence that these two arrests were related in any way.  The arrests took place over a year apart, different officers were involved,

different criminal charges were leveled, and the criminal prosecutions proceeded and ended differently."); *see also Wright v. Burkhead*, No. 607CV-2039ORL-19KRS, 2008 WL 423452, at *4 (M.D. Fla. Feb. 13, 2008) (severing claims against two police officer defendants, and explaining: "[h]owever, [p]laintiff alleges two different false arrests by two different officers and sues these officers in their individual capacities.   Plaintiff has made no claims that the circumstances of one arrest had anything to do with the circumstances of the other arrest, nor does [p]laintiff claim a unifying policy or practice of unlawful arrests." (citations omitted)); *Watson v. City of Dyersburg*, No. 08-2718, 2010 WL 1491412, at *3 (W.D. Tenn. Apr. 13, 2010) (denying a motion to sever without prejudice to be raised at a later stage in the proceedings, and explaining: "[h]owever, [plaintiff's] [c]omplaint alleges that the Dyersburg Drug Task Force, of which all four officer [d]efendants were members, wrongfully targeted him for arrest and harassment.   This allegation links the alleged incidents, making them 'reasonably related' and arguably part of the same transaction. . . .   At this early stage of the litigation and with an allegation that members of the Dyersburg Drug Task Force acted in concert with one another to deny [p]laintiff his civil rights, the Court is reluctant to conclude that [p]laintiff's allegations do not arise from the same transaction or occurrence."); *Chepilko v. City of New York*, No. 11-CV-2878 ARR LB, 2012 WL 2792935, at *3 (E.D.N.Y. July 6, 2012) (conducting a Rule 20 analysis and explaining:"[t]he incident in *Chepilko I* and the two incidents alleged in the instant complaint are substantially similar in type and purpose to comprise a 'series of transactions.'   All three incidents involve the City of New York and individual employees of the New York Police Department and a claim that plaintiff was subjected to false arrest, malicious prosecution, or retaliation for vending expressive art on public property in alleged violation of plaintiff's rights under the First, Fourth and Fourteenth Amendments.   Moreover, plaintiff's claims are linked by plaintiff's identical claim

against the City of New York: that the City has a policy or custom of unlawfully harassing and/or arresting vendors of expressive art on public property.").

Plaintiff's First Amended Complaint has adequately alleged a connection between the three encounters at issue such that the Court finds that severance is not appropriate at this time.  In the present case, Plaintiff sets forth claims arising out of three encounters with law enforcement which occurred on three different dates, with each involving officers of the New Castle Police Department.  Significantly, Plaintiff alleges that Officer Conti was involved in each of the three encounters, and that each of these encounters allegedly involved, in some respect, New Castle Police Department officers using threatening language and committing violent acts as to Plaintiff. The second and third encounter occurred within four days of each other, and each involved Plaintiff being pulled over while she was driving in her car along back roads in New Castle, Pennsylvania. While the Court acknowledges the large temporal gap between the first and third encounter, the facts alleged with respect to these encounters are similar in that each is alleged to involve an escalating scenario culminating in Plaintiff being allegedly unlawfully physically assaulted by and arrested by New Castle Police officers, including Officer Conti.  The First Amended Complaint sets forth allegations of a pattern of similar conduct by New Castle Police Department officers taken against the Plaintiff, with each encounter involving Officer Conti.

While it is not clear at this juncture, given that this matter is currently at the pleading stage, whether the circumstances of any of the encounters informed the others, the First Amended Complaint's claims arising out of the encounters at issue involve allegations respecting the consistent presence of Officer Conti and a consistent manner of treatment of Plaintiff.  The Court finds that the First Amended Complaint's claims arising from the alleged encounters plead facts to suggest that the claims involve the same factual and legal issues or involve offshoots of the same

11

basic controversy between the parties.  Accordingly, the Court finds that the First Amended Complaint sufficiently alleges that the three encounters at issue are part of a series of transactions or occurrences such that joinder, at this time, of Plaintiff's claims against Defendants arising out of these encounters is permissible under Rule 20.

The Court stresses that this case presents a very close call, and that it will deny Defendants' Motion without prejudice.  However, given that "joinder of claims, parties and remedies is strongly encouraged," *Hagan*, 570 F.3d at 153, and given that the only prejudice asserted by Defendants is prejudice that they will purportedly suffer at a trial in this matter, the Court will deny Defendants' Motion at this time.  *See Russell*, 305 F.R.D. at 82 ("Given the liberal policies favoring joinder of parties absent disproportionate prejudice and the Court's ability to sever parties or claims at any time, the Court is inclined to deny Defendants' motion without prejudice and allow them to raise the issue again in the future, if appropriate.  While the Defendants argue that a failure to sever the Plaintiffs at this point unduly prejudices them, the Court finds that is not the case.  Keeping the claims together during the discovery phase of the litigation would not prejudice any party, and may encourage efficiency.  *See, e.g., Lane v. Tschetter*, 2007 WL 2007493, *7 (D.D.C. Jul. 10, 2007).  The primary prejudice would arise if misjoined parties or claims were allowed to go to trial before jurors, which may cause confusion.  The Court and the Parties enjoy the opportunity to revisit this issue before that could occur.  Therefore, the Court discerns no material prejudice to the Defendants by deferring to the liberal policy behind joinder, proceeding to discovery so that the Parties more fully develop the record, and then allowing the Defendants to raise their motion to sever again prior to trial if they believe it is warranted.").  While the Court will deny Defendants' Motion, Defendants may raise the issue of severance again at the conclusion of discovery, if warranted.

**IV.     Conclusion**

      For the reasons discussed above, it is hereby ORDERED that Defendants' Motion to Sever (ECF No. 18) is denied without prejudice to Defendants filing a motion to sever raising the issues discussed above, if warranted, following discovery in this matter.  Defendants shall file a response to Plaintiff's First Amended Complaint by May 27, 2021.

BY THE COURT:


s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: May 6, 2021
cc/ecf: All counsel of record